# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAREN LEE WELLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-427-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Karen Lee Wells requests judicial review of a final decision of the Commissioner of the Social Security Administration, granting her social security benefits for a closed period from June 1, 2003, through November 22, 2009, and terminating her benefits thereafter, pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision to terminate her benefits and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled after November 22, 2009. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 12, 1958, and was fifty-four years old at the time of the most recent administrative hearing (Tr. 102, 428, 433). She has a high school education, and vocational training in hospitality, daycare, and business and office education (Tr. 102, 499). The claimant alleges that she has been unable to work since June 1, 2003, due to irritable bowel syndrome, depression, anxiety, panic attacks, psoriasis, allergies, high cholesterol, osteoporosis, menopausal syndrome, nausea, abdominal pain, severe headaches, and obsessive compulsive disorder (Tr. 492).

## Procedural History

On August 9, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 428-38). Her applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 28, 2009 (Tr. 234-44). The Appeals Council remanded the case to the ALJ on February 26, 2010 (Tr. 246-48). ALJ Michael Kirkpatrick then conducted a second administrative hearing and determined the claimant was not disabled in a written opinion dated December 14, 2010 (Tr. 252-66). The Appeals Council again remanded the case to the ALJ on August 24, 2012 (Tr. 273-75). ALJ Doug Gabbard, II, conducted a third administrative hearing, and in a written opinion dated March 5, 2013, he

determined that the claimant was disabled beginning June 1, 2003, but that her disability terminated on November 23, 2009 (Tr. 70-90). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

For the period prior to November 23, 2009, the ALJ found that the claimant retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except she must have frequent unscheduled work breaks and work absences, and could perform unskilled work (defined as work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct, and concrete; interpersonal contact with co-workers is incidental to the work performed (*i. e.,* assembly work); and there are no dealings with the public (Tr. 84). The ALJ concluded that there were no jobs existing in significant numbers in the national economy for a person with those limitations (Tr. 81). The ALJ further found that the claimant's medical condition improved as of November 23, 2009 (Tr. 83). He then revised the claimant's RFC as of that date to eliminate the need for frequent unscheduled work breaks and absences (Tr. 84). The ALJ then concluded that as of November 23, 2009, although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economies that she could perform, *e. g.*, cook's helper and laundry worker (Tr. 89-90).

## Review

The claimant contends that the ALJ erred by: (i) finding medical improvement on November 23, 2009, and (ii) by failing to properly consider her obesity. The Court finds these arguments unpersuasive.

The ALJ determined that the claimant had the severe impairments of obesity status post gastric bypass, irritable bowel syndrome, affective mood disorder, and generalized anxiety disorder during both relevant time periods (Tr. 74, 81). The medical evidence relevant to this appeal reveals that Dr. Gary Cannon diagnosed the claimant with irritable bowel syndrome ("IBS") on June 10, 2002, and thereafter managed her IBS medications until March 24, 2004 (Tr. 609-18). On November 12, 2004, Dr. Tatum, a gastroenterologist, performed an endoscopy of the claimant's gastrointestinal tract, the results of which were normal (Tr. 669). From February 17, 2005, through June 3, 2008, the claimant received medication management for IBS through the Indian Health Care Resource Center ("IHCRC") (Tr. 719-31, 751-60, 783-807,). On August 12, 2009, the claimant established care with physician assistant Gwen Hendrix at the Choctaw Nation Indian Health Clinic (Tr. 772-73). She reported intermittent diarrhea and a history of IBS at this initial appointment, but between November 23, 2009, and November 15, 2011, she reported one IBS flare up on June 28, 2010, and consistently denied abdominal pain, nausea, vomiting, diarrhea, and constipation (Tr. 763-74, 780, 833-54, 910-11). A colonoscopy performed March 17, 2010, was normal (Tr. 776).

On October 28, 2006, Dr. Ashley Aldrich conducted a consultative physical examination of the claimant, and assessed her with depression, anxiety, and IBS (Tr. 680-

81). Dr. Aldrich noted the claimant reported an increase in depression and anxiety because she was confined to her home with IBS (Tr. 681). She also noted the claimant reported functional limitations because of her unpredictable bowel symptoms and multiple episodes of fecal incontinence outside of her home (Tr. 681).

On December 5, 2006, state reviewing physician Dr. Shafeek Sanbar determined that the claimant could perform the full range of medium work (Tr. 698-705).

On October 12, 2012, Dr. Ashley Gourd conducted a consultative physical examination of the claimant, and assessed her with right wrist pain status post internal fixation, IBS, and bipolar disorder (Tr. 900-01). On a Medical Source Statement dated the same day, Dr. Gourd found, *inter alia*, that during an 8-hour workday, the claimant could sit for 3 hours total, could stand/walk for 30 minutes total, and that she would be lying down for the remaining 4 hours (Tr. 903). Dr. Gourd also found that the claimant had numerous postural and environmental limitations, but nonetheless indicated that she could do activities such as shop, travel alone, use public transportation, walk a block at a reasonable pace on uneven surfaces, and climb a few steps without using a handrail (Tr. 905-06). Dr. Gourd did not identify any medical or clinical findings to support or explain the limitations she found (Tr. 903, 905).

The Commissioner has promulgated an eight-step sequential evaluation process to determine whether a claimant's disability continues or ends. *See Hayden v. Barnhart,* 374 F.3d 986, 988 (10th Cir. 2004); 20 C.F.R. § 404.1594(f)(1–8).[2] These steps are

---

[2] The sequential evaluation process for determining whether a claimant's disability benefits should continue when a claimant is receiving supplemental security income benefits

outlined in 20 C.F.R. § 404.1594(f). Step one requires the ALJ to determine if the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine if the claimant has an impairment or combination of impairments that meets or equals a Listing. Step three requires a determination that there has been medical improvement as shown by a decrease in medical severity. At step four, the ALJ must determine whether the medical improvement is related to the ability to do work. At step five, if there has been no medical improvement, or if the improvement is not related to the ability to work, the ALJ must determine if an exception applies. At step six, if medical improvement is shown to be related to the ability to do work, or if an exception applies, the ALJ must determine if all current impairments are severe, including a consideration of all current impairments and the impact of the combination of these impairments. If one or more impairments are considered severe, the ALJ must assess at step seven the claimant's ability to perform substantial gainful activity and whether the claimant could perform past relevant work. At step eight, if the claimant cannot perform past relevant work, the ALJ must determine if there is other work the claimant could perform. *See* 20 C.F.R. § 404.1594(f). For each of these steps, the burden is on the Commissioner in a termination-of-benefits review. *See Hayden,* 374 F.3d at 991.

In this case, the ALJ determined in his written opinion that the claimant was under a disability from June 1, 2003, through November 22, 2009, then proceeded through the

---

involves only seven steps. 20 C.F.R. § 416.994(b)(5)(1-7). There is no step for determining whether the claimant is presently engaged in substantial gainful activity, which is the first step in the analysis for claimants receiving disability insurance benefits. 20 C.F.R. § 404.1594(f)(1). Thereafter, the sequential evaluation process is the same for both types of benefits.

steps set out in 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). The ALJ determined that the claimant had not developed any new impairment(s) since November 23, 2009 (Tr. 81). He found there was no evidence to find she met a listing, then determined that she had experienced medical improvement as of November 23, 2009. In support of this finding he cited, *inter alia*, a May 11, 2009, report that her medications were effective; that she consistently denied abdominal pain, nausea, vomiting, diarrhea, or constipation at her appointments with Ms. Hendrix from November 23, 2009, through November 15, 2011; and that she did not report taking any IBS medication at two emergency room visits (for reasons unrelated to her disability claim) in September 2010 and January 2011 (Tr. 83).[3] Next, the ALJ determined that the claimant's medical improvement was related to her ability to work because her functional capacity for work activities had increased. The ALJ then determined that beginning November 23, 2009, the claimant retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except she could perform unskilled work (defined as work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time) where supervision is simple, direct, and concrete; interpersonal contact with co-workers is incidental to the work performed (*i. e.,* assembly work); and there are no dealings with the public (Tr. 84).

In support of his RFC findings beginning November 23, 2009, the ALJ summarized the claimant's hearing testimony, as well as much of the medical evidence in

---

[3] The ALJ stated in his written opinion that both emergency room visits occurred in September 2010, however, the page numbers in the record that he references to reflect there was an emergency room visit on September 27, 2010, and on January 28, 2011 (Tr. 845, 862).

the record (Tr. 81-89). As to the opinions in the record, the ALJ gave Dr. Aldrich's assessment very little weight because (i) she was not the claimant's treating physician; (ii) she appeared to rely solely on the claimant's subjective complaints (which the ALJ found not completely credible); (iii) she did not reference any treatment notes, hospitalizations, or objective medical evidence to support her assessment; and (iv) her physical findings were normal (Tr. 85). The ALJ then gave Dr. Gourd's opinion little weight because (i) it was internally inconsistent; (ii) it contained a driving limitation despite the fact that no treating physician dissuaded the claimant from driving or caring for her young nephew as she had reported; (iii) her physical findings were normal except for tenderness to palpation in the abdomen; and (iv) she appeared to rely "quite heavily" on the claimant's subjective statements by accepting as true most, if not all, of the claimant's reports (which the ALJ found not completely credible). He then gave great weight to the state reviewing physicians' opinions, finding that they were consistent with the medical evidence of record as a whole, and found the claimant not credible.

The claimant first argues that the ALJ engaged in improper "picking and choosing" when making his finding that the claimant had experienced medical improvement. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). Specifically, she asserts that the ALJ ignored Ms. Hendrix's treatment note dated June 28, 2010, wherein she reported a flare up of IBS symptoms (Tr. 780). First, the claimant's symptoms do not need to be completely resolved to support a finding of medical improvement. Medical improvement

is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most favorable decision . . . ." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1). Here, the record indicates that the IBS flare-up the claimant reported on June 28, 2010, was the only one she reported between November 2009 and November 2011. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Here, the ALJ did not recite the June 2010 treatment note within the medical improvement analysis of his decision, but he clearly considered it because he did discuss it earlier in his opinion (Tr. 76). Furthermore, one flare-up in a two-year period is not sufficient to rebut the ALJ's findings as to the claimant's functional limitations during this time.

The claimant next argues that the ALJ improperly relied on her March 2010 colonoscopy as a basis for finding medical improvement in her IBS symptoms. In support, she states that IBS does not cause structural abnormalities in the intestines that are visible on a colonoscopy. However, the ALJ did not find medical improvement based solely on the claimant's normal colonoscopy. He also relied on the claimant's entire treatment record after November 23, 2009, including treatment notes reflecting improvement with medication and decreased symptoms, and the claimant's failure to list her IBS medications on medication reconciliation forms at emergency room visits in September 2010 and January 2011 (Tr. 83). *See Shepherd v. Apfel*, 184 F.3d 1196, 1201 (10th Cir. 1999) ("To apply the medical improvement test, the ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s)

which was present at the time of the most recent favorable medical decision finding the claimant disabled.").

The claimant also argues that the ALJ erred by relying on Dr. Sanbar's December 5, 2006, opinion that the claimant could perform medium work (Tr. 698-705). She specifically asserts that because Dr. Sanbar did not have access to the records beyond December 5, 2006 (the date he completed the Physical RFC Assessment form), his opinion was of little value when the ALJ relied on it as support for his RFC determination beginning November 23, 2009. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). The record in this case does contain evidence not reviewed by Dr. Sanbar, including treatment notes from IHCRC and Ms. Hendrix, and Dr. Gourd's consultative examination. However, it is not error for an ALJ to rely on a medical opinion that is based on a portion of the record if the ALJ adequately considers the evidence that occurs after the opinion. *See Williams v. Colvin,* No. 14-1198-JWL, 2015 WL 5333537, at *4 (D. Kan. Sept. 14, 2015). Here, the ALJ specifically discussed the claimant's treatment at IHCRC through July 2008 and the treatment provided by Ms. Hendrix, and he rejected Dr. Gourd's October 2012 opinion (Tr. 74, 76, 83, 85-86). Additionally, the ALJ stated that he based his analysis of Dr. Sanbar's opinion on the record as a whole, and not just the evidence prior to December 5, 2006 (Tr. 87). Lastly, the ALJ determined that the claimant's severe impairments were the same both before and after November 23, 2009, and the evidence that accrued after

December 2006 does not show any deterioration in the claimant's condition, nor does it contain any evidence contrary to Dr. Sanbar's opinion. Thus, the claimant has shown no error in the ALJ's reliance on Dr. Sanbar's opinion.

The claimant last argues that the ALJ erred by finding her obesity was a severe impairment at step two, and then not discussing it when assessing her RFC at step four. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2000 WL 628049, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6 (Sept. 12, 2002). The record reflects that the claimant's weight ranged from 150 to 204 pounds and she is five feet, five inches tall (Tr. 629, 680, 850-55). The claimant argues that ALJ failed to properly account for her obesity, but the ALJ *did* adequately discuss the claimant's physical and mental impairments and the reasons for his RFC determination. Furthermore, the claimant does not point to any evidence in the medical record indicating "functional

limitations from [her] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the RFC[,] . . ." *Jimison ex rel. Sims v. Colvin,* 513 Fed. Appx. 789, 798 (10th Cir. 2013), and the ALJ is not required to speculate as to the impact of her obesity. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments."). The Court therefore finds no error in the ALJ's consideration of the claimant's obesity.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 23rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**